IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PAUL ISER AND DONNA ISER,

    Plaintiffs,

v.

CSAA FIRE AND CASUALTY
INSURANCE COMPANY

    Defendant.

Case No. 18-CV-504-JFH-CDL

## OPINION AND ORDER

Before this Court is the Motion for Summary Judgment ("Motion") [Dkt. No. 50] filed by Defendant CSAA Fire and Casualty Insurance Company ("CSAA"). Plaintiffs Paul Iser and Donna Iser's (collectively, the "Isers") filed a Response and Objection to CSAA's Motion for Summary Judgment. Dkt. No. 65. CSAA filed a reply. Dkt. No. 88.

## BACKGROUND

The Isers' lake home and dock were insured by CSAA. A weather event occurred while the Isers were out of the country causing damage to their dock. The Isers submitted a claim to CSAA which was ultimately denied. This suit resulted, wherein the Isers assert claims for breach of the insurance contract and bad faith against CSAA and seek actual and punitive damages. Now, CSAA moves for summary judgment on Isers' claims.

The following material facts are undisputed:

The Isers' lake house on Grand Lake of the Cherokees ("Grand Lake") was insured under a policy issued by CSAA, policy number H03-003903808. Dkt. No. 50-1 at 2. As part of the insurance policy, the Isers' dock was also insured. *Id.* The Isers' were out of the country on May

17, 2017 when they received a telephone call that their dock was dislodged. Dkt. No. 50-2 at 38:17-39:2. The Isers had the dock secured and contacted CSAA to make a claim for the damage to the dock. *Id.* and Dkt. No. 65-2 at 21. CSAA arranged for U.S. Adjusting Services to investigate the damage to the dock. Dkt. No. 50-1 at 26. Ken Butler ("Butler"), of U.S. Adjusting Services, investigated the claim and inspected the dock on June 3, 2017. Dkt. No. 65-2 at 19. On June 14, 2017, CSAA issued a check in the amount of $4,100.00 for "emergency & temporary repairs to the boat dock less the $1,500.00 policy deductible." Dkt. Nos. 65-12 and 65-13. CSAA later hired Donan Engineering to further investigate the claim. Dkt. No. 50-1 at 4. Donan Engineering inspected the dock on June 23, 2017. *Id.*

> The insurance policy provides, in relevant part:
>
> SECTION I – PERILS INSURED AGAINST
>
> A. Coverage A – Dwelling and Coverage B – Other Structures
>
> 1. We insure against risk of direct physical loss to property described in Coverages A and B.
>
> 2. We do not insure, however, for loss:
>
>   a. Excluded under Section I – Exclusions [which provides];
>
> SECTION I – EXCLUSIONS
>
> A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> 3. Water Damage
>
>   Water damage means:
>
>   Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

Dkt. No. 50-1 at 15; Dkt. No. 65-20 at 13, 42 and 50.

U.S. Adjusting originally concluded wind, a covered event, was responsible for the damage to the boat dock. *See* CSAA's Undisputed Material Fact #7 and Dkt. No. 65-1. However, upon

additional investigation, on July 6, 2017, CSAA denied the claim stating the "damage was caused by waves" and "[t]his is not something your policy covers" relying on the Section I.A(3) exclusion. Dkt. No. 50-1 at 10 and 26; *see also* CSAA's Undisputed Material Fact #7.

The following are the allegedly disputed material facts:

The Isers contend the dock was not damaged by waves (an excluded event) but by wind (a covered event). Dkt. No. 65 at ¶ 35. The Isers rely on their expert, Bryan Hill ("Hill"), and their neighbor/dock repairman, Mike Sopha ("Sopha"), to support their contention. *Id.* and ¶ 26; Dkt. Nos. 65-27 and 65-6.

Further, the Isers assert the records support their belief that CSAA purposefully changed the cause of the damage from wind to waves to avoid covering the damage. *Compare* Dkt. No. 65-1 ("cause of loss: wind from 5/17/17 storm") *with* Dkt. No. 65-9 ("cause of loss: wind from 5/17/17 storm or rising water and wave action"). The Isers believe the Loss Report was only revised after it was rejected. Dkt. No. 65 at 10, ¶ 6; *see also* Dkt. Nos. 65-2 at 17; 65-1 and 65-9. The Isers assert Butler originally concluded the damage was caused by wind and recommended covering the claim. Dkt. No. 65 at 5-6; *see also* Dkt. No. 65-1; Dkt. No. 65-2 at 17 ("I do not believe the policy will allow for coverage for additional docking expenses, just for the structure itself."). The claim file notes indicate "cause of loss confirmed" on June 14, 2017 at 8:53 a.m. Dkt. No. 65-2 at 15. The Isers understood the $4,100.00 payment was an initial payment and believed the payment reflected CSAA's original determination that the claim was covered. Dkt. No. 65 at 6-7; *see also* Dkt. Nos. 65-12; 65-13; 65-2 at 15 ("Explained to Paul that we would issue initial payment for emergency & temporary repairs to mitigate further damage to the structure . . . ." and "Mike [Sopha] agreed to submit an itemized invoice for final repair costs.") and at 14 ("no

3

exceptions or exclusions apply to this windstorm loss."). These notes were entered in the claim file at 9:15 a.m. and 9:41 a.m. on June 14, 2017. Dkt. No. 65-2 at 14-15.

Later that day, at 12:17 p.m. a note was entered in the claim file that stated: "Paul Iser mentioned during my conversation with him earlier today that 3'-4' waves caused the damage to his property . . . ." Dkt. No. 65-2 at 13. Mr. Iser disputes that he said this. Mr. Iser points to the fact that he was in Europe at the time of the damage and could not have had any personal knowledge concerning the state of the lake on May 17, 2017. Dkt. No. 65 at 25; *see also* Dkt. No. 50-2 at 38:19-23. At 12:32 p.m. a note was entered stating, "potential coverage issue (damage from waves)." Dkt. No. 65-2 at 13. After this note, Donan Engineering was contacted to further investigate the cause of the damage. *Id.* at 12-13. The Isers believe this timeline of events and documentation supports their conclusion that the cause of the damage was changed to waves to avoid covering the claim.

Further, the Isers contend that CSAA's expert contradicts himself rendering his conclusion (and thus CSAA's position) unsupported by the facts. Dkt. No. 65 at 9. Brian Campbell ("Campbell") of Donan Engineering investigated the Isers' claim. Dkt. No. 65-16. Campbell states three variables must be present for water to move and waves to develop: high winds, fetch distance and two (2) to three (3) hours of consistent wind. *Id.* at 5. Campbell's report also states, "by taking out one of the three variables from the equation, the generation of moving water and waves will not happen." *Id.* Campbell concluded "no high winds were reported by NOAA in the area on May 16, 2017, or on May 17, 2017" and, nevertheless, "the dock and walkway were displaced and damaged by moving-water forces." *Id.* at 6. Since Campbell asserts there were not any high wind events on the day of the damage, the Isers reason it is impossible for Campbell to conclude waves caused the damage. *See* Dkt. No. 65 at 9. Taking these facts together, the Isers

4

contend there is a material factual dispute as to what caused the damage to their dock barring summary judgment.

CSAA's response to the Isers' position is that it is immaterial because the parties' experts, along with Butler and Sopha all acknowledged the water levels at Grand Lake were high at the time of the loss. Dkt. No. 88 at 9; *see also* Dkt. No. 65-9 (Loss report notes "investigation into lake levels found that Grand Lake levels were expected to be the highest since at least 2007 and were expected to crest at 754.41 FT on Saturday May 30th 2017. . . . In my opinion the dock movement is more likely to be from elevated lake levels and wave action VS movement by high winds only."); Dkt. No. 65-16 (Donan Engineering Report states, "the lake was 11.16 feet above the normal lake level on May 17, 2017."); and Dkt. No. 65-27 (Hill report states, "once the water elevation had increased to the point the cables were slack, winds on May 17, 2017 rotated the Iser boat dock, resulting in walkway failure and impact to the Smith boat dock . . . ."). CSAA contends the exclusion of "surface water" in the definition of "water damage" applies to the elevated lake levels. Dkt. No. 50 at 9. As such, if the elevated lake levels placed slack in the dock lines allowing the wind to damage the dock (as Hill contends), the damage is still excluded because "surface water" was a contributing factor to the loss. *Id.; see also* Dkt. No. 65-27.

**STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The Court's role at the summary judgment stage is not to weigh the evidence or resolve any disputed issues in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

**DISCUSSION**

**I.  Breach of Contract**

Under Oklahoma law, an insurance policy is treated as a contract and enforced according to its terms. *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* 747 P.2d 947, 953 (Okla. 1987); *Davis-Travis v. State Farm Fire & Cas. Co.*, 336 Fed. Appx. 770, 772 (10th Cir. 2009) (unpublished).[1] "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157. Accordingly, when determining a policy's scope of coverage, the Court interprets the policy as a whole. *See Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 378 (Okla. 1991). In construing an insurance contract, ifs terms and words, if unambiguous, must be accepted in their plain, ordinary and popular sense. *Flitton v. Equity Fire and Cas. Co.*, 824 P.2d 1132, 1134 (Okla. 1992) (citation omitted); *see also* Okla. Stat. tit. 15, § 160.

---

[1] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. *See* FED. R. APP. 32.1; 10TH CIR. R. 32.1.

**A. The term "surface waters"**

Here, the Isers contend the term "surface water" is ambiguous. Dkt. No. 65 at 23. CSAA does not directly address this position but appears to disagree. *See* Dkt. No. 88. "To ascertain whether certain provisions of an agreement are ambiguous, the language used must be examined and construed with the plain, popular, and generally accepted meaning of the words employed and with reference to all provisions of the document." *Heller v. Fire Ins. Exchange*, 800 P.2d 1006, 1008 (Colo. 1990) (citing *Florom v. Elliott Mfg.*, 867 F.2d 570, 757 (10th Cir. 1989)).

In the insurance context, surface water has been defined consistently by a number of courts. The Colorado Supreme Court, when construing a policy that excluded from coverage any loss resulting from "water damage," which was defined in part as "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether driven by wind or not," defined "surface water" as:

> [W]ater melted from snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough, or marsh, and lost by percolation, evaporation or natural drainage. Surface water is distinguished from water of a natural stream, lake or pond, is not of substantial or permanent existence, has no banks, and follows no defined course or channel.

*Heller*, 800 P.2d at 1007, 1008-09.[2]

In *Front Row Theatre, Inc. v. American Mfr's Mut. Ins. Companies,* 18 F.3d 1343 (6th Cir. 1994), while construing a flood exclusion, the Sixth Circuit adopted the *Heller* Court's definition of surface water. *See Front Row Theatre, Inc.*, 18 F.3d at 1347. Other courts have defined "surface water" similarly. *See Fenmode v. Aetna Casualty & Surety Co.*, 6 N.W. 2d 479, 481 (1942) (cited

---

[2] The Court acknowledges CSAA cited a number of regulations and cases wherein "surface water" includes lakes. *See* Dkt. No. 88 at 8. However, the Court finds it more appropriate to consider authority defining "surface water" in the context of an insurance policy.

by *Front Row* and defining surface waters as "commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of casual or vagrant character . . ."); *Chateau Village North Condo. Assoc. v. American Family Mutual Ins. Co.*, 170 F. Supp. 3d 1349, 1358 (D. Colo. 2016) (adopting *Front Row* and *Heller's* definition of surface water).

The term "surface water" is not ambiguous merely because it is undefined in the policy. *Davis-Travis*, 336 Fed. Appx. at 774; *see also Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002). Its meaning can be ascertained by looking at the common definitions accepted by courts. *Heller,* 800 P.2d at 1009. When construing the term "surface water," as used in the insurance policy, in harmony with the generally accepted meaning of the term and with reference to all provisions of the policy, the Court concludes the term is not ambiguous. The Court adopts the *Heller* Court and the *Front Row Theatre* Court's definition of surface water. *See*

### B. Application of the facts to the policy

Thus, under Oklahoma law, "insurance policies are contracts and they should be construed as every other contract – according to its terms where it is not ambiguous." *Equity Ins. Co. v. City of Jenks*, 184 P.3d 541, 544 (Okla. 2008). In order to recover on a breach of contract theory, the Isers must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 844 (Okla. 2001). There is no dispute that there was the formation of a contract here. Dkt. No. 50-1. The question is whether the insurance policy covers the damage to the dock, and if it does, did CSAA breach the insurance policy by denying the claim. The answer to this question is determined by the cause of the damage.[3]

---

[3] Since the Court adopts *Heller* and *Front Row's* definition of surface water, it follows that Grand Lake and/or elevated lake levels are not surface water. As such, damage to the Isers' dock caused

8

The record before the Court indicates the parties have differing opinions as to what caused the damage to the dock. The Isers contend wind damaged the dock. Dkt. No. 65 at 20-21. CSAA contends waves, at least in part, caused the damage. Dkt. No. 65-17 at 3; *see also* Dkt. No. 50 at 2. Both parties support their positions with citations to evidentiary material. *See* Dkt. No. 50-1 through 50-3; Dkt. No. 65-1 through 65-32. "Causation is generally a question of fact for a jury . . . ." *Pioneer Centres Holding Company Employee Stock Ownership Plan and Trust v. Alerus,* 858 F.3d 1324, 1333-34 (10th Cir. 2017) (internal citations and quotations omitted). However, "where the facts are undisputed and reasonable minds can draw only one conclusion from them, causation is a question of law for the court." *Id.* at 1334 (internal citations and quotations omitted). The Court concludes the cause of the damage to Isers' dock is disputed, and reasonable minds could reach different conclusions from the facts. The jury must decide the cause of the damage. Denial of CSAA's motion as to the breach of contract claim is appropriate.

**II. Bad Faith**

"[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort . . . ." *Christian v. American Home Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977). The elements of a bad faith claim are:

(1) The insurer was required under the insurance policy to pay the insured's claim;

(2) The insurer's refusal to pay the claim in full was unreasonable under the circumstances because it:

    a. had no reasonable basis for the refusal;

    b. did not perform a proper investigation; or

    c. did not evaluate the results of the investigation properly;

---

by elevated lake levels is not excluded under the Isers' policy. It is unnecessary for the Court to consider CSAA's surface water theory further.

>  (3) The insurer did not deal fairly and in good faith towards the insured; and
>
>  (4) The insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured.

*Duensing v. State Farm Fire and Cas. Co.*, 131 P.3d 127, 138 (Okla. App. 2005); *see also* Oklahoma Uniform Jury Instruction – Civil 22.2.

> Oklahoma law has also recognized that the mere allegation of an insurer's breach of the duties of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination: a jury question arises only where the relevant facts in dispute or where the undisputed facts permit differing inferences as to the reasonableness of the insurer's conduct.

*City Nat. Bank & Trust Co. v. Jackson Nat. Life Ins.*, 804 P.2d 463, 468 (Okla. App. 1990) (citing *Duckett v. Allstate Ins. Co.*, 606 F. Supp. 728, 731 (W.D. Okla. 1985)).  Before submitting a case to the jury, the trial court must first determine, under the facts of the particular case and as a matter of law, whether the insurer's conduct may be reasonably perceived as tortious. *Id.*

The Court finds the Isers have identified a dispute of material fact.  The Isers contend CSAA's initial determination to cover the claim and subsequent hiring of an engineering firm who determined the cause of the loss was an excluded event indicate CSAA acted unreasonable, without good faith, to disallow the claim. *See* Dkt. Nos. 65 at 25.  In contrast, CSAA asserts its denial was reasonable based on the information provided to it by the expert and the independent adjuster.  Dkt. No. 50 at 13-15.  Based upon the record, the Court concludes that the relevant facts in dispute would permit differing inferences as to the reasonableness of CSAA's conduct.  Thus, it is for the jury to determine whether CSAA's actions were reasonable given the circumstances and summary judgment on this claim is not appropriate.[4]

---

[4] The Court does not address the Isers' argument concerning CSAA's failure to investigate Donna Iser's claim for personal property. *See* Dkt. No. 65 at 25.  The Isers did not assert a claim based on this conduct in their Complaint. *See* Dkt. No. 2-2.

### III. Punitive Damages

The Oklahoma Supreme Court recognizes that punitive damages may be available for breach of an insurer's duty of good faith and fair dealing. *Christian*, 577 P.2d at 904. Punitive damages may be awarded only if the plaintiff shows by clear and convincing evidence that the defendant has been "guilty of reckless disregard for the rights of others." Okla. Stat. tit. 23, § 9.1; *Rodebush by and through Rodebush v. Okla. Nursing Homes, Ltd.,* 867 P.2d 1241, 1251 (Okla. 1993). A person acts in reckless disregard for the rights of others if he "was either aware, or did not care, that there was a substantial risk that [his] conduct would cause serious injury to others." *Gowens v. Barstow,* 364 P.3d 644, 652 (Okla. 2015). The trial court must determine as a matter of law whether the plaintiff has produced sufficient evidence that a reasonable jury could find that a defendant acted with reckless disregard before instructing the jury as to punitive damages. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005).

"Punitive damages are those damages which are given because of the wanton, reckless, malicious, or oppressive character of the acts of the defendant." *Wagoner v. Bennett,* 814 P.2d 476, 478 (Okla. 1991). "They are meant to punish the wrongdoers and to act as a deterrent to others." *Id.* The Oklahoma Supreme Court has explained:

> The intent in willful and wanton misconduct is not an intent to cause the injury; it is an intent to do an act – or the failure to do an act – in reckless disregard of the consequences and under such circumstances that a reasonable man would know, or have reason to know, that such conduct would be likely to result in substantial harm to another.

*Graham v. Keuchel*, 847 P.2d 342, 362 (Okla. 1993).

Here, there is a fact issue as to whether CSAA acted in bad faith when it denied the Isers' claim; a reasonable fact-finder could find that CSAA acted with the requisite reckless disregard of the Isers' rights to warrant punitive damages. *Fees v. American Family Life Insurance Company*

*of Columbus,* No. 19-CV-476, 2020 WL 3039124, at *8 (N.D. Okla. June 5, 2020).  The Court finds that CSAA's motion for summary judgment as to punitive damages should be denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment [Dkt. No. 50] filed by Defendant CSAA Fire and Casualty Insurance Company is **DENIED**.

DATED this 11th day of December, 2020.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE