# United States District Court
## for the Northern District of Oklahoma

Case No. 18-CV-504-JDR-CDL

Paul Iser and Donna Iser, *individually and as husband and wife*,

*Plaintiffs*,

*versus*

CSAA Fire and Casualty Insurance Company,

*Defendant*.

## OPINION AND ORDER

In May of 2017, a weather event damaged Paul and Donna Iser's boat dock. Dkt. 2-2 at ¶ 5. The dock was insured by CSAA Fire and Casualty Insurance Company. The Isers claim that wind caused the damage, while CSAA believes that waves from the lake caused the damage. Dkt. 2 at ¶ 3. Based on this belief, CSAA ultimately denied the Isers' claim. The Isers now bring a claim for breach of contract and a tort claim for breach of the duty of good faith and fair dealing. *Id.* at ¶ 4.

CSAA has filed a motion to exclude the testimony of the Isers' claim handling and bad faith expert, Art Bates. Dkt. 51. Alternatively, it submits a motion seeking to limit the scope of Mr. Bates's testimony. *Id.* CSAA filed eight additional motions in limine seeking exclusion of other categories of evidence. Dkt. Nos. 52, 56, 57, 58, 59, 60, 61, 62. All the motions are contested. Dkt. Nos. 75, 76. The motions have been fully briefed and are ripe for review.

The Court begins with CSAA's first motion, which seeks to wholly exclude Mr. Bates from testifying at trial. Dkt. 51. CSAA argues that Mr. Bates should not be allowed to testify because his report is not relevant and

only contains "his misperception of Oklahoma law." *Id.* at 2. The Isers respond that, because CSAA focuses its motion on the weight of Mr. Bates's opinion rather than his qualifications, this issue is more properly addressed as a motion in limine. Dkt. 76 at 5. CSAA agrees that Bates's qualification is not in question. Dkt. 83 at 2.

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

Initially, the Court must determine "whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). If the expert is qualified, the Court then shifts its focus to "whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Id.* at 1278. Because the parties agree that Mr. Bates is qualified to testify, the Court focuses its analysis on the reliability and relevance of his proposed testimony. *Id.*

No. 18-CV-504

As to reliability, the trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. The focus should be on the methodology in reaching conclusions, rather than the actual conclusions. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005). Although not a definitive checklist, the 10th Circuit recognizes four factors the court should analyze when determining reliability:

> (1) whether the theory has been or can be tested or falsified;
> (2) whether the theory or technique has been subject to peer review and publication;
> (3) whether there are known potential rates of error regarding specific techniques; and
> (4) whether the theory or approach has "general acceptance."

*Id.* at 1233 (quoting *Daubert*, 509 U.S. at 593-94). Further, whether another court has accepted a methodology is relevant in determining if expert testimony is reliable. *Ehterton v. Owners Ins. Co.*, 829 F.3d 1209, 1222 (10th Cir. 2016).

Mr. Bates has provided a list of his resources for review. Dkt. 76-4 at 14-15. He also indicates that his opinions are:

> based upon review of documents previously listed, [his] knowledge of insurance customs and practices and [his] thirty-nine years of handling, supervising, and evaluating claims, as well as [his] exposure to claim handling procedures by other insurance companies and [his] experience over the past eight years as an insurance consultant and expert witness.

Dkt. 76-4 at 10. Based on a review of Mr. Bates's curriculum vitae and his years of relevant experience, the Court concludes that his methodology is reliable. *See, e.g., Bright*, 2014 WL 121479, at *3 ("A reliable methodology would be to describe industry standards and then apply them to the facts at

hand."). Because Mr. Bates is qualified and his methodology is reliable, CSAA's motion to exclude his testimony is DENIED. The issue of relevance is better addressed as a motion in limine.

To address CSAA's first motion in limine, the Court must determine what portion, if any, of Mr. Bates's proposed testimony is relevant. Relevant testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). Many courts have found that juries are capable, with proper legal instruction from the court and without expert witness testimony, of evaluating whether an insurer acted in bad faith regarding claim handling standards and the reasonableness of the insurer's actions.[1] Further, a claim handling expert should not be permitted to define the duty of good faith and fair dealing or reach a conclusion as to whether the duty has been violated. *See, e.g., Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-0668-CVE-FHM, 2017 WL 4012964, at *10 (N.D. Okla. Sept. 12, 2017) ("[A]n expert may not attempt to define the law that a fact-finder must follow or direct the jury's understanding of the legal standards upon which [its] verdict must be based." (quotation marks and citation omitted)); *see also Thomspon v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939 (10th Cir. 1994).

The Isers do not contest these basic principles and state that Mr. Bates "will not be defining the law or directing the jury's understanding of the legal standards upon which their verdict must be based." Dkt. 76 at 10. They do, however, ask that Mr. Bates "be allowed to testify as to the applicable industry

---

[1] *See, e.g., City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586-87 (10th Cir. 1998) (affirming district court's decision that "the jury was capable of determining the bad faith issue on its own"); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 940 (10th Cir. 1994) (affirming exclusion of expert witness who would compare "State Farm's actions to the industry standard and the laws of the State of Oklahoma" because of "the jury's competence to deal with the bad faith issue on its own" (quotation marks omitted)); *Am. Commerce Ins. Co. v. Harris*, No. CIV-07-423-SPS, 2009 WL 130225, at *1 (E.D. Okla. Jan. 16, 2009) (excluding testimony from an insurance adjuster because it would not assist the fact finder in understanding the evidence or determining a fact in issue).

standards and whether CSAA's claims handling conduct is consistent with those standards based on his training, expertise, experience and review of the relevant documents." *Id.* at 12. This testimony is relevant, the Isers argue, because:

> The jurors responsible for deciding whether CSAA mishandled the Isers' claim will likely have no idea how a homeowners policy property claim involving a boat dock loss should be handled given the disputed water exclusion, how policy exclusions factor into the claim evaluation/handling/analysis, when and how payments should be or are made for damage sustained by an insured's home or personal property, how claims should be documented within the claim file and what claim handling guidelines insurance carriers are required to provide to their adjusters.

*Id.* at 8. Courts regularly permit experts to testify concerning standard insurance industry practices. *See, e.g.*, *Koontz v. CSAA Fire & Cas. Ins. Co.*, No. CIV-18-801-SLP, 2019 WL 8331472, at *4 (W.D. Okla. Aug. 22, 2019) ("Mr. Cary should be allowed to opine regarding standard insurance industry practices for inspecting roofs . . . ."); *see also Graves v. Pennsylvania Mfrs. Indem. Co.*, No. CIV-19-60-SLP, 2019 WL 10058881, at *5 (W.D. Okla. Oct. 24, 2019) ("Testimony from Ms. Rankin, an experienced claim adjuster, would assist the jury's understanding and appreciation of the issues involved and the relevant insurance industry standards."); *see also Magallan*, 2017 WL 4012964, at *10 ("Luther may testify about Zurich's claims handling practices based on her training and experience . . . .").

CSAA's motion in limine regarding Mr. Bates's testimony is GRANTED in part and DENIED in part. The Court will not allow Mr. Bates to define CSAA's duty of good faith and fair dealing, the legal parameters of bad faith as a matter of Oklahoma law, or the "efficient proximate cause doctrine." *Koontz*, 2019 WL 8331472, at *3; *Magallan*, 2017 WL 4012964, at

*10. He should not use the terms "bad faith," "good faith," "unfair," "unreasonable," "duty," or "required" in the context of CSAA's relationship with the Isers and cannot offer an opinion on the ultimate conclusions as to whether CSAA acted in bad faith. *Id.* Mr. Bates will be permitted to testify, based on his own experience and training, as to the standard insurance industry practices for claim handling, inspecting docks, claim investigation, and evaluating an insured's claim. *E.g.*, *Koontz*, 2019 WL 8331472, at *4; *Seikel v. Am. Med. Sec. Life Ins. Co.*, No. CIV-05-1403-T, 2007 WL 4864462, at *1 (W.D. Okla. May 11, 2007) ("Because the average juror is not likely to be familiar with the practices and procedures involved in processing insurance claims, the court concludes that expert testimony on these matters is appropriate and will assist the trier of fact."); *Payne v. Geico Indem. Co.*, No. CIV-01-1414-HE, 2002 WL 34439222, at *2 (W.D. Okla. May 17, 2002).

In its second motion in limine, CSAA seeks to exclude any evidence or reference to Oklahoma's Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, § 1250.1, *et seq.* Dkt. 52. CSAA argues that the Act does not afford a private right of action for damages. *Id.* at 2. CSAA also argues that the standard for violating the Act and the standard for a bad faith claim are different; thus, any discussion of alleged violations of the Act at trial would be irrelevant and unfairly prejudicial. *Id.* at 2-3. The Isers agree that the Act does not establish the standard for the duty of good faith and fair dealing but argue that the Act is indicative of the insurance industry's standards and could aid the jury's determination as to whether CSAA's conduct was reasonable. Dkt. 75 at 2.

The Act "was designed to provide the [Oklahoma] Insurance Commissioner with power to regulate the insurance industry by issuing 'cease and desist' orders or by revoking or suspending an insurance company's license to do business in Oklahoma." *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216, 223 (Okla. Civ. App. 2014) (quoting *Walker v. Chouteau Lime Co.*, 849 P.2d 1085, 1087 (Okla. 1993)). Thus, the

Act "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing," and "it does not function as an appropriate guide for a jury to determine bad faith." *Id.* at 224. This Court and many others have determined that evidence of or reference to violations of the Act would be confusing for the jury and unfairly prejudicial. *See, e.g.*, *Greene v. State Farm Fire & Cas. Co.*, No. 22-cv-135-CDL, 2023 WL 6130614, at *5 (N.D. Okla. Sept. 19, 2023); *Koontz*, 2019 WL 8331472, at *3; *Magallan*, 2017 WL 4012964, at *10. Accordingly, CSAA's second motion in limine is GRANTED.

CSAA's third motion in limine seeks to preclude the Isers from offering any form of testimony regarding the golden rule or asking jurors to put themselves in the Isers' shoes. Dkt. 56. The Isers assert that golden-rule arguments are improper as to damages. Dkt. 75 at 6. They argue that the Tenth Circuit recognizes that a golden-rule argument may be proper "where the reasonableness of the conduct, in light of information known at the time, is at issue." *Id.* (citing *Schultz v. Rice*, 809 F.2d 643, 651-652 (10th Cir. 1986)).

As the parties rightly agree, golden-rule arguments should never be made when asking a jury to determine an appropriate damage award. *See Schultz*, 809 F.2d at 651-52 (collecting cases) (recognizing the general proposition that a jury may not be instructed to "place itself in a party's shoes *with respect to damages*"). Golden-rule arguments are only permitted in the liability context in narrow circumstances. For example, in *Schultz*, the jury was asked to consider whether a physician acted reasonably when he provided a particular medication to the pregnant plaintiff. *Id.* at 652. In closing arguments, the physician argued that the jury should "consider the reasonableness of [the physician's] actions in light of the information he possessed at the time of the injection but before the return of the pregnancy test results." *Id.* The Court of Appeals concluded that the physician's argument, which was "directed solely to the reasonableness" of his conduct based on the information

available to him, could "hardly be characterized as an emotional appeal" that would compromise the jury's neutrality. *Id.*

In view of *Schultz*, this Court concludes that arguments urging a juror to step into the shoes of a party are permissible only to the extent they invite the jury to consider "the reasonableness of conduct, in light of information known at the time." *See Smith v. CSAA Fire & Cas. Ins. Co.*, No. CIV-17-1302-D, 2020 WL 4340546, at *2 (W.D. Okla. July 28, 2020). Such arguments are simply not the type of improper "emotional appeals" that could lead a jury to make a biased decision based on emotion, rather than the evidence. *See Schultz*, 809 F.2d at 652. The Isers concede that they will not improperly use golden-rule arguments concerning damages. Dkt. 75 at 7. The Court RESERVES RULING on the issue of golden-rule arguments concerning liability until trial and will consider any objections raised at that time given the context of the proposed argument.

CSAA's fourth motion in limine asks the Court to exclude any reference to the various loss reserves set on the Isers' claim because they do not accurately reflect CSAA's evaluation of the claim. Dkt. 57. Rather, CSAA claims, the loss reserves are set to address "requirements imposed by insurance departments of the various states." *Id.* at 1. Conversely, the Isers argue that the loss reserves are indicative of CSAA's internal assessment of their claim, "a critical fact issue in this case."[2] Dkt. 75 at 8-9.

Of the many cases cited by CSAA, few address the issue of loss reserves in the context of a motion in limine.[3] The purpose of a motion in limine

---

[2] The Isers note that CSAA has not produced the loss reserves and asks the Court to compel production. Dkt. 75 at 9. Discovery in this case closed on September 8, 2020, [Dkt. 49], and the Isers did not file a motion to compel. Therefore, the Court declines to compel CSAA to produce the loss reserve information.

[3] *See CR Operating Co. v. Great Am. Ins. Co. of New York*, No. CIV-12-00715-HE, 2013 WL 12091068 (W.D. Okla. Sept. 27, 2013) (order on defendant's motion for partial summary judgment); *Porter v. Farmers Ins. Co.*, No. 10-CV-116-GKF-PJC, 2011 WL 1566018 (N.D. Okla. Apr. 25, 2011) (order ruling on a motion to compel); *LeBlanc v. Travelers Home*

is to determine if there is any context in which the evidence may be admissible at trial. *See, e.g., Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644-GKF-FHM, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019). Generally, Oklahoma courts have found that loss reserves may be relevant, but admissibility hinges on whether the evidence is unduly prejudicial. *Sandhar v. CSAA Fire & Cas. Ins. Co.*, No. 19-cv-00306-JFH-CDL, 2023 WL 2646307, at *4 (N.D. Okla. Mar. 27, 2023) (collecting cases) ("Several courts within the Tenth Circuit have acknowledged the relevance of loss reserves, while reaching different conclusions as to whether such evidence is unduly prejudicial.").

The Court agrees with other courts in this district that loss reserves can be relevant to bad faith claims and holds accordingly here. *See, e.g., Morrison v. Chartis Prop. Cas. Co.*, No. 13-CV-116-JED-PJC, 2014 WL 840597, at *3 (N.D. Okla. Mar. 4, 2014). As to whether the evidence is prejudicial, CSAA argues that evidence of the loss reserves will confuse the jury because the reserves are not relevant to the claim handler's analysis of the amount due under the policy. Dkt. 57 at 6. In this situation where the probative value of the evidence must be weighed against the danger of unfair prejudice, courts find that any potential prejudice can be avoided by using an appropriate jury instruction. *See, e.g., Hellard v. Mid Century Ins. Co.*, No. 19-CV-00043-GKF-CDL, 2021 WL 5003445, at *4 (N.D. Okla. Feb. 18, 2021); *see also Elk City Golf & Country Club, Inc. v. Philadelphia Indem. Ins. Co.*, No. CIV-18-196-D, 2020 WL 53556, at *4 (W.D. Okla. Jan. 3, 2020). Additionally, nothing prevents CSAA from introducing testimony from company witnesses who can explain the role of loss reserves in the context of the Isers' claim specifically and CSAA's property claims generally. CSAA has every right to introduce evidence to clear up any confusion it perceives from the introduction of loss reserves.

---

*& Marine Ins. Co.*, No. CIV-10-00503-HE, 2011 WL 2748616 (W.D. Okla. July 13, 2011) (order on motion for summary judgment).

No. 18-CV-504

In line with the cases cited, the Court holds that any prejudice to CSAA that may be caused by admission of loss reserve information can be avoided by an appropriate jury instruction or the introduction of evidence to explain the loss reserves. The parties are invited to proffer a limiting instruction regarding evidence of insurance loss reserves for use during the trial at the completion of the evidence. CSAA's fourth motion in limine is DENIED.

The Court next considers CSAA's fifth motion in limine, which seeks to prohibit arguments that CSAA should "look 'harder' for ways to *pay* a claim than to *deny* a claim." Dkt. 58 at 1. CSAA argues that this type of argument is the same as instructing the jury on the law and constitutes a legal conclusion. *Id.* The Isers claim that industry standards, Oklahoma law, and the testimony of CSAA's claim adjuster support the finding that "an insurer should make as much an effort to pay a claim as it does to save money in denying a claim." Dkt. 75 at 9. Both parties agree that Oklahoma law requires an insurer to conduct an unbiased investigation into the claim. Dkt. Nos. 58 at 2, 75 at 9.

It is the Court's sole responsibility to instruct the jury on the applicable law. *See, e.g., Smith*, 2020 WL 4340546, at *3; *see also Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) ("In no instance can a witness be permitted to define the law of the case."). Accordingly, "[n]either party shall be permitted to mischaracterize th[e] legal obligation [of an insurer] in a way that is contrary to law and misleading." *Fees v. Am. Family Life Ins. Co. of Columbus ("Aflac")*, No. 19-CV-0476-CVE-JFJ, 2021 WL 2104990, at *5 (N.D. Okla. May 25, 2021). If an insurer has a contractual obligation to pay a claim, it makes no difference "how hard" an adjuster looks at the claim to find a way to pay it. The insurer has an obligation, or not. Thus, the Court RESERVES RULING on the fifth motion in limine until trial and will consider any objections raised at that time given the context of the proposed argument.

CSAA's sixth motion in limine similarly seeks to prevent the Isers from arguing or suggesting that CSAA owes its insureds the "benefit of the doubt" when handling a claim. Dkt. 59. CSAA argues that this type of comment would be offered to instruct the jury on an erroneous statement of law. *Id.* at 1. The Isers respond that they do not intend to directly ask whether CSAA has a duty to give the insured the "benefit of the doubt." Dkt. 75 at 10. Because the parties agree on the issue, CSAA's sixth motion in limine is DENIED as moot.

In its seventh motion in limine, CSAA seeks to exclude evidence concerning other claims or lawsuits that CSAA insureds have brought against CSAA and its affiliates. Dkt. 60. CSAA argues that the evidence would be irrelevant, unfairly prejudicial, unduly confusing to the jury, inadmissible hearsay, and inadmissible "character evidence." *Id.* at 2. The Isers respond that ruling on the motion is premature because it lacks specificity. Dkt. 75 at 11-12. Alternatively, they argue that the evidence is admissible because it is relevant to an insured's bad faith claim in showing a claim handling pattern. *Id.* at 12. CSAA replies that the motion is as specific as possible without knowing exactly which cases or complaints the Isers intend to offer into evidence at trial. Dkt. 82 at 2.

The Court is skeptical of evidence of other claims and lawsuits. The questions in *this* lawsuit relate to the facts and circumstances of the Isers' claim against CSAA. The question of whether the claim is payable depends on the individual facts of this case. And if the claim was payable, whether CSAA denied the claim in bad faith also depends on the unique facts surrounding CSAA's investigation of the Isers' claim. This Court does not intend for the Isers' trial against CSAA to devolve into mini trials of other insureds' claims against CSAA, particularly those that have not been adjudicated to a final decision based on a fixed set of facts.

The Court nevertheless agrees with the parties and other courts that it is difficult to determine the relevance or probative value of such evidence

before it has been identified. *See, e.g., Sandhar*, 2023 WL 2646307, at *5 (denying motion in limine "without prejudice as to the Parties' ability to challenge specific evidence identified in final witness and exhibit lists"); *Minter v. Prime Equip. Co.*, No. CIV-02-132-KEW, 2007 WL 2703093, at *2 (E.D. Okla. Sept. 14, 2007) (reserving ruling on the issue until trial). Thus, the Court RESERVES RULING on this issue until trial. The Isers are instructed to bring any proposed evidence concerning any other claims or lawsuits to the Court outside the presence of the jury prior to introduction.

CSAA's eighth motion asks the court to prohibit the Isers from offering evidence relevant to punitive damages in the first stage of trial. Dkt. 61. CSAA argues that legal arguments concerning punitive damages, punishing CSAA, making an example of CSAA, or sending a message would be improper, irrelevant, and highly prejudicial. *Id.* at 1. The Isers respond that they do not "intend to present argument about punitive damages during the first phase of the trial beyond noting that punitive damages are being requested." Dkt. 75 at 12. They contend that they will only offer evidence of CSAA's alleged reckless disregard or malice. *Id.* at 13.

Both parties correctly agree that Oklahoma law requires a bifurcated trial when punitive damages are at issue and that punitive damages may only be addressed during the second stage of trial. Dkt. Nos. 61 at 2, 75 at 12; *see* Oklahoma Uniform Jury Instruction Civ (2d) 22.5. To reach the second stage of trial, the jury must not only find in favor of the plaintiff and award actual damages but must also find that the defendant acted with reckless disregard for the rights of others. *See, e.g., Dennis v. Progressive N. Ins. Co.*, No. CIV-17-182-SLP, 2018 WL 4871039, at *13 (W.D. Okla. Apr. 9, 2018); *see also Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 906 (Okla. 2006). Accordingly, plaintiffs must be able to present evidence of a defendant's reckless disregard or malice during the first stage to determine if a second stage is necessary. *Id.*

The Isers will be prohibited from using language about punishing CSAA, making an example of CSAA, or sending a message to CSAA. *See,*

*e.g., Smith*, 2020 WL 4340546, at *5. The Isers will be allowed in the first phase of trial to inform the jury that they are seeking punitive damages and they may seek to admit evidence of CSAA's alleged reckless disregard or malicious intent. *Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-00329-JD, 2020 WL 1056306, at *7 (W.D. Okla. Mar. 4, 2020). CSAA's eighth motion is GRANTED in part and DENIED in part.

CSAA's ninth and final motion in limine seeks to exclude evidence of its claim handling guidelines arguing that they cannot be used to establish the standard of care for the Isers' bad faith claim. Dkt. 62. CSAA bases this argument on the ruling in *Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1165 (10th Cir. 2011), and various other nonbinding authorities. *Id.* at 1-2. The Isers argue that compliance with claim handling guidelines is relevant to both their breach of contract and bad faith claims because CSAA's alleged improper claim handling stems from "the lack of sufficient internal guidelines or training." Dkt. 75 at 14-15.

Contrary to what CSAA argues, *Johnston* does not support the conclusion that evidence of the claim handling guidelines should be excluded here. *Godfrey*, 2020 WL 1056306, at *9 (in *Johnson*, "[t]he policy remained a part of the evidence in the case, and more importantly, *Johnson* made no evidentiary or relevancy holdings"). Although a violation of internal guidelines does not alone amount to bad faith, it certainly may be relevant to a bad faith or breach of contract claim. *Id.*; *Sandhar*, 2023 WL 2646307, at *5-6; *Shotts v. GEICO Gen. Ins. Co.*, No. CIV-16-1266-SLP, 2018 WL 4832625, at *4 (W.D. Okla. July 12, 2018). CSAA's ninth motion is DENIED.

For the reasons discussed above, the Court disposes of CSAA's motion to exclude testimony and motions in limine as follows:

Motion to Exclude Testimony is DENIED;

Motion in Limine No 1. is GRANTED in part and DENIED in part;

Motion in Limine No. 2 is GRANTED;

No. 18-CV-504

Motion in Limine No. 3 is RESERVED for trial;

Motion in Limine No. 4 is DENIED;

Motion in Limine No. 5 is RESERVED for trial;

Motion in Limine No. 6 is DENIED as MOOT;

Motion in Limine No. 7 is RESERVED for trial;

Motion in Limine No. 8 is GRANTED in part and DENIED in part;

Motion in Limine No. 9 is DENIED.

For the motions denied or reserved, the Court's rulings are preliminary. The Court reminds the parties of their continued obligation to reassert evidentiary challenges at trial to preserve those challenges for appeal.

DATED this 4th day of April 2024.

*JOHN D. RUSSELL*
*United States District Judge*